IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LORA FREIER-HECKLER | ) | Case No. 1:20-CV-00367 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| v. | ) | |
| | ) | |
| DENIS MCDONOUGH,[1] SECRETARY, | ) | REPLY IN SUPPORT OF |
| DEPARTMENT OF VETERANS' | ) | DEFENDANTS' MOTION FOR |
| AFFAIRS, et al., | ) | SUMMARY JUDGMENT |
| | ) | |
| Defendants. | | |

## I.     Introduction

Plaintiff Lora Freier-Heckler's opposition brief to Defendants Denis McDonough, Secretary of Veterans Affairs, and the Louis Stokes Cleveland VA Medical Center's (hereinafter collectively referred to as "VA") Motion for Summary Judgment is full of vague generalizations, hearsay, a sweeping reference to seven depositions (most of which are never actually named or cited to), an affidavit bringing to light an event that happened in 2015 which was never mentioned before, and Freier-Heckler's 121 paragraph/21 page self-serving affidavit, which at times contradicts her deposition testimony.

Despite this conglomerate of generalized and unreliable information, Plaintiff still has not adequately presented a *genuine* issue of *material* fact. And she failed to cite any authority to establish that Phillip Rutledge's alleged conduct truly is discrimination based on her gender or that it amounts to a hostile work environment. Rather, she merely describes petty slights and annoyances that do not rise to the level of discrimination. In addition, she has failed to make a retaliation case. Freier-Heckler simply does not agree with the AIB report which led to her

---

[1] Secretary of Veterans Affairs Denis McDonough assumed office on February 9, 2021 and pursuant to Fed. R. Civ. P. 25(d), is automatically substituted as the defendant in this matter.

demotion. However, she has failed to show that the VA's reliance on this report was mere pretext for discrimination, instead relying on her own unsupported conspiracy theories. For these reasons, the VA is entitled to judgment as a matter of law.

## II. Law and Argument

### A. *Freier-Heckler's Contradictory Affidavit Testimony Should Be Disregarded*

Freier-Heckler's Brief in Opposition to the VA's Motion for Summary Judgment is replete with unsupported generalizations, false statements, and mischaracterization of Philip Rutledge's deposition testimony. As an initial matter, Freier-Heckler almost exclusively cites to her affidavit when her deposition testimony addressed many of the same issues. In fact, at times, her affidavit contradicts her deposition testimony. This contradictory testimony must be disregarded. "It is undeniably established in the Sixth Circuit, as elsewhere, that a party may not create a genuine issue of material fact sufficient to defeat summary judgment by filing an affidavit in which he contradicts a statement he made in a deposition." *Smith v. Consol. Rail Corp.*, 91 F.3d 144 (6th Cir. 1996). The Sixth Circuit has made it clear "sham affidavits" should not be relied on:

> If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.

*Beichele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984) quoting *Perma Research & Development CO. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir. 1969). A sham "affidavit cannot be used as a tool to try to overturn a summary judgment ruling." *Moore v. Ohio River Co.,* 960 F.2d 149 (6th Cir. 1992).

The court may strike an affidavit which "constitutes an attempt to create a sham fact issue." *Franks v. Nimmo,* 796 F.2d 1230, 1237 (10th Cir.1986). The 10th Circuit Court in *Franks* articulated a non-exhaustive list a court may use to determine whether an affidavit creates a sham

fact issue including "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony, or whether the affidavit was based on newly discovered evidence…" *Aerel, S.R.L. v. PCC Airfoils, L.L.C.,* 448 F.3d at 899, 908-9 quoting *Franks*, 796 F.2d at 1237. Here, Freier-Heckler was deposed at length and nothing described in her affidavit is information she did not already have at the time of her deposition. Therefore, Freier-Heckler's affidavit should be stricken.

1. **Freier-Heckler said in her deposition that Philip Rutledge selected her to fill the position of Assistant Chief of Logistics.**

Philip Rutledge selected Freier-Heckler to be his Assistant Chief in Logistics, knowing full well that she was a woman. Freier-Heckler confirmed this fact in her deposition and made it clear that Rutledge was not only on a panel who selected her but was the ultimate decision-maker:

> A: … but [Rutledge] was on the interview board, he picked me.
> Q: So he was part of the group that hired you in that position?
> A: He was the final decision [sic] who picked me.

(Quoted Excerpts of Deposition of Lora Freier-Heckler, attached as Exhibit 1, at page 46-47 (hereinafter referred to as "Freier-Heckler Tr.____" )[2].

Incredibly, Freier-Heckler now contradicts that testimony in her Brief in Opposition and downplays the role Rutledge played in her selection. Instead, she argues, Rutledge wanted to hire William Precht for that position instead. Since this accusation is contradictory to her own deposition testimony, this sham fact should be disregarded.

2. **Freier-Heckler never mentioned the "rubber band incident" in any of her complaints to the VA administration, the EEOC, her Complaint, or her deposition.**

Freier-Heckler has painstakingly kept notes of every petty slight she has perceived by

---

[2] Plaintiff's entire deposition has been filed (ECF No. 39).

Rutledge from 2014 to 2019. She met with the Director of the VA, the Associate Director, and the HR Director more than 180 times to discuss Rutledge. She filed four EEOC charges and filed this suit. She was deposed on October 19, 2021 and asked no less than 16 times during her deposition, including after breaks with her attorney, to describe all the ways that Rutledge created a hostile work environment (Freier-Heckler Tr. 48:16; 54:7; 56:10; 66:7; 68:13; 72:5; 74:8; 80:21; 81:24; 83:18; 84:16; 85:12; 85:22; 133:25; 134:18; 136:24). At no time did Freier-Heckler mention this rubber band throwing incident. She only just now, after the close of discovery, presented an affidavit of a disgruntled employee alleging for the first time that Rutledge threw a rubber band at Freier-Heckler's behind more than five years ago in 2015 or 2016.

Freier-Heckler's attempt to create a genuine issue is not credible, and it must be disregarded. As discussed above, a court may disregard an affidavit which creates a sham fact issue unless the witness was not cross-examined during earlier testimony or the affidavit is based on newly discovered evidence. *Franks v. Nimmo,* 796 F.2d 1230, 1237 (10th Cir. 1986). Freier-Heckler was asked no less than 16 times during her deposition to name all the incidents which occurred which made up her hostile work environment claim, and she not once mentioned this rubber band incident. This incident was certainly not newly discovered evidence as this alleged incident occurred five to six years ago. If this rubber band incident really occurred, Freier-Heckler "was required to say so at [her] deposition when [she] was specifically questioned on the subject." *Smith v. Consolidated Rail Corp.,* 91 F.3d 144, *4 (6th Cir. 1996). Consequently, the Court should disregard this incident described in Freier-Heckler's affidavit.

For the same reasons, the Court should also disregard Freier-Heckler's statement in her affidavit that Rutledge mispronounced her name or considered her position an internship. She did not list these facts as evidence of a hostile work environment when she testified during her lengthy deposition or in any of her four administrative EEO complaints.

4

    3.    **Freier-Heckler said nothing of her office move keeping her behind "a locked door."**

Freier-Heckler has made much ado about Rutledge moving her office next to his in the management suite. It is strange that Freier-Heckler takes issue with this move, considering she wanted more responsibility and respect as a manager. Indeed, while most people would find a move to the management suite favorable, Freier-Heckler considers it evidence of a hostile work environment.

As discussed in the VA's Motion for Summary Judgment, this move cannot be considered objectively intimidating, hostile, or offensive as is required in a prima facie hostile work environment claim. *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008). Thus, Freier-Heckler has now added a new detail to this complaint—that she was moved behind "a locked door." This was not a detail Freier-Heckler ever mentioned before, including in her deposition:

> A.    I was in an office and I was moved across the hall into a secured room with him with separate offices.
> Q.    Okay. But you were in the same area as Phil Rutledge, you were moved to?
> A.    Correct. He moved me over in his section. So there's a suite, a hall and into another suite.
> Q.    Okay.
> A.    With separate offices.

(Freier-Heckler Tr. 49:2-12). Whatever issue Freier-Heckler had with her new office, she unequivocally testified that Rutledge also was in the same section. She made no mention of "locked doors" prior to her Brief in Opposition. Regardless, the office move could not have anything to do with her gender as Rutledge had an office in the same space.

    4.    **Freier-Heckler has exaggerated her deposition testimony regarding Rutledge telling her to leave one meeting and making his calendar private.**

Freier-Heckler said in her deposition that *one time* Rutledge told her to stop talking during a meeting and asked her to leave. Freier-Heckler said in her deposition:

5

> A. There was one meeting where he told me I couldn't talk.
>
> \*\*\*
>
> A. I said, why are you not letting me talk and he just looked at me, shrugged his shoulders and was like, no, and turned around and left…
>
> \*\*\*
>
> A. So he wrapped up a few things at the end of the meeting and then he dismissed me and told them to stay.
>
> \*\*\*
>
> Q. After this meeting did he ever tell you to leave another meeting again?
>
> A. No.
>
> Q. Okay. Did he ever tell you not to talk at another meeting?
>
> A. No….

(Freier-Heckler Tr. 57:3-4; 60:23-61:1, 8-11; 62:1-7).

Now in her affidavit, Freier-Heckler claims that Rutledge "ordered me not to speak at staff meetings" (plural) and "ordered me to leave a meeting while male underlings were permitted to stay" as retaliation for her sex discrimination and retaliation complaints. (Freier-Heckler Aff. p. 11). Freier-Heckler has contradicted her deposition testimony that these things happened once. She has also added in the sham fact that these things were "an order" and done in retaliation for her complaints.

She also exaggerates the fact that Rutledge made his personal Outlook calendar private by calling it the "Daily Calendar access" in her affidavit and saying it was the "centerpiece of her work and function of her job as Assistant Chief in Logistics." (Freier-Heckler BIO p. 5). Freier-Heckler also attributed this action to retaliation for the first time in her affidavit. That was not stated in her deposition. These sham facts should not bar summary judgment.

### B. The Hearsay Testimony Cited by Freier-Heckler is Inadmissible Evidence

In several places in her brief, Freier-Heckler relies on hearsay testimony to support her argument. Under Fed. R. Civ. 56(c)(2), "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Thus, the VA

6

objects to the inadmissible hearsay sprinkled throughout Freier-Heckler's brief including Exhibit 7 to her brief (email from Kenneth Smith to Andrew Pacyna dated January 3, 2017). Even if this email were to be considered, despite the mischaracterization in Freier-Heckler's Brief, this email says nothing about discrimination, retaliation, or gender.

### C. Freier-Heckler's Unsupported Conspiracy Theories Do Not Create an Issue of Fact

Without citing to any evidence, Freier-Heckler makes sweeping accusations against the VA, which amount to nothing more than conspiracy theories. She claims that the VA openly hid evidence (although she has been given thousands and thousands of pages of documents), pressured the EEO to modify its fact finding, and claims "Rutledge affirmatively tracked down and organized Transportation workers under him to file charges against Dr. Freier-Heckler concerning the audit, arranging to set up a baseless 2nd AIB against her even though she was the officially designated Auditor and which openly excluded and ignored all her witnesses." (Freier-Heckler BIO p. 7). She cites nothing to support this grand statement.[3]

As discussed in the VA's Motion for Summary Judgment, there is no evidence to support these conspiracy theories. Regarding the so-called "baseless" 2nd AIB, the AIB was composed of VA employees from outside the Cleveland VAMC and Freier-Heckler admits that she did not know any of them. (Freier-Heckler Dep. p. 96-99). The Board considered over 50 exhibits, which included testimony from 21 different employees. (*See* AIB Mem p. 2-4). The AIB found: "Almost every witness testified that Dr. Freier-Heckler made negative comments to subordinate staff concerning other management officials on a frequent basis" (AIB Mem. p. 7) and went on to describe several other troubling behaviors including: behaving unprofessionally, screaming, and

---

[3] Freier-Heckler claims in her Brief in Opposition that she cites to Rutledge's deposition in her affidavit regarding this subject, but her affidavit actually does not. (See page 16 of Freier-Heckler Affidavit).

using profanity against a manager at an October 2017 meeting (AIB Mem p. 9-11); yelling at another employee in November 2017 (AIB Mem p. 12); and inappropriately discussing EEO complaints with subordinate employees (AIB Mem p. 18).

The Board considered Freier-Heckler's conspiracy theories but ultimately found the witnesses to be credible as more than one reliable witness testified, including witnesses Freier-Heckler believed to be unbiased. (AIB Mem. p. 20). The Board found Freier-Heckler "does not exhibit the forbearance and polish required by her position" (AIB Mem. p. 21) and recommended she no longer hold a managerial role. Relying on this report, the VA demoted Freier-Heckler to a non-managerial role.

To survive summary judgment, Freier-Heckler must show that the reason the VA demoted her was not because of the AIB recommendation *and* that this reason was pretext. Freier-Heckler's pretext cannot be based on her conspiracy theories alone. Freier-Heckler cannot show pretext when the AIB report was based on the testimony of 21 different people and the recommendation of three people who were not employees of the Cleveland VA. *See, e.g., Spearmon v. Southwestern Bell Tel. Co.*, 662 F.2d 509, 512 (8th Cir.1981) (no discrimination where "several supervisors" evaluated the plaintiff unfavorably). Indeed, "rumors, conclusory allegations and subjective beliefs" are "wholly insufficient evidence to establish a claim of discrimination, as a matter of law." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992).

Furthermore, Defendants were entitled to rely upon the findings and recommendations of the AIB. This is true even if Freier-Heckler believes the AIB was unfair. *See Eley v. U.S. Dept. of Veteran Affairs*, 2006 WL 208779 at *4 (D. Minn. Jan. 25, 2006)(the VAMC acted reasonably and in good faith based upon the AIB's investigation and recommendation, whether it correctly concluded that Eley engaged in sexual harassment is immaterial.) Freier-Heckler was demoted based upon the findings and recommendation of the AIB. The demotion was "based on an

honestly held belief in a nondiscriminatory reason supported by particularized facts." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 709 (6th Cir. 2006). Thus, the Court should not consider Freier-Heckler's conspiracy theories when granting summary judgment.

### D. The Remaining Facts Do Not Rise to the Level of an Actionable Gender Discrimination, Hostile Work Environment, or Retaliation Claims

As discussed in the VA's Motion for Summary Judgment, this is not a case of gender discrimination or hostile work environment. This is a case about two managers who apparently disagreed over the extent of the role of the assistant manager. All of Freier-Heckler's complaints involve the extent of her authority over the Logistics Services section—not her gender: i.e. not having access to Rutledge's Outlook calendar, not being addressed as "doctor" after obtaining a Ph.D. for personal reasons, asking her to stop talking and leave one meeting, telling subordinates who to report what to, etc.

However, "Title VII is not a shield against harsh treatment at the workplace." *Jackson v. City of Killeen,* 654 F.2d 1181, 1186 (5th Cir.1981). "The constitution does not guarantee a remedy for every wrong." *M.J. by & through S.J. v. Akron City Sch. Dist. Bd. Of Educ.,* 1 F.4th 436, 442 (6th Cir. 2021). Indeed, "[a]n employer may make employment decisions 'for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.'" *Brown v. Renter's Choice, Inc*., 55 F.Supp.2d 788, 795 (N.D. Ohio 1999), quoting *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984). Freier-Heckler cannot legally prevail under any of her claims and the VA is entitled to judgment as a matter of law.

#### 1. Gender Discrimination

To prove a prima facie case of gender discrimination, Freier-Heckler must establish that she experienced an adverse employment action. Examples of adverse employment actions include

9

"hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," which normally inflicts indirect economic harm. *Freeman v. Potter,* 200 F. App'x 439, 442 (6th Cir. 2006) (quoting *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761 (1998)). The only adverse employment action Freier-Hecker experienced was her demotion.

To show that her demotion was discriminatory, Freier-Heckler must produce evidence of similarly situated male employees who were treated more favorably. *See Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 353 (6th Cir. 1998) ("[T]he plaintiff [must] demonstrate that he or she is similarly-situated to [a] non-protected employee in all relevant respects.") Freier-Heckler generally argues in her Brief that men were treated better than she was. However, the only comparator that is relevant for purposes of the gender discrimination claim is the former transportation manager Chevz Seals. Like Freier-Heckler, Seals worked under Rutledge. The transportation section which he managed was subject to an AIB—Freier-Heckler calls it "the Seals AIB" in her affidavit. (Freier-Heckler Aff. ¶ 94). And just like Freier-Heckler, Seals was demoted based on the outcome of the AIB. (Freier-Heckler Aff. ¶ 93). In fact, Seals was demoted three pay levels, which is two more than Freier-Heckler was demoted (her actual pecuniary loss was $621). (Freier-Heckler BIO p. 7). Thus, the VA's reasons could not have been motivated by gender when the same thing happened to an allegedly similarly-situated male employee.

Even if Freier-Heckler could prevail on a prima facie discrimination claim, the VA has articulated a legitimate, non-discriminatory reason for demoting Freier-Heckler— the AIB investigation and recommendation that Freier-Heckler no longer hold a managerial role. If the employer submits admissible evidence that "taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action," then the employer has met its burden of production. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). "At this point, the

presumption created by the prima facie case drops from the case because the employer's evidence has rebutted the presumption of discrimination." *Id.*

Freier-Heckler has provided no evidence that the VA's explanation is pretextual besides conspiracy theories. And a similar investigation was conducted against a male employee, with an even worse outcome. Consequently, the VA is entitled to judgment as a matter of law as to the gender discrimination claim.

**2. Hostile Work Environment Based on Gender**

Freier-Heckler claims she was subjected to a hostile work environment because over the course of five years Rutledge: moved her office to the management suite by him; one time asked her to watch his son and keep an eye on his house; one time stopped her from talking in a meeting and dismissed her before the others; did not share his outlook calendar with her; and did not call her "doctor." Even if these accusations are taken as true, none of these actions amount to actionable harassment.

"Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a "general civility code." *Oncale v. Sundowner Offshore Services*, 523 U.S. 75, 79 (1998). Properly applied, they will filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) quoting B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 175 (1992).

To assess whether the harassment unreasonably interfered with the work performance and created a hostile environment, courts must consider the totality of the circumstances, "including

11

'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance. . . .'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (quoting *Harris*, 510 U.S. at 23). The United States Supreme Court has made it clear that "conduct must be extreme to amount to a change in the terms and conditions of employment. . . " *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "[S]imple teasing, … offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (internal citations and quotation omitted.)

Freier-Heckler has cited no cases where courts have found that the conduct she complains of amounts to a hostile work environment. In fact, the case law says the opposite: an employee being told to stop talking by a supervisor is not evidence of a hostile work environment. *Lewis v. Potter,* 114 Fed. Appx. 262, 264 (8th Cir. 2004). Being asked to leave a meeting is not considered severe or pervasive enough to establish a prima facie case of a hostile work environment. *Singleton v. Auburn University Montgomery,* 520 Fed.Appx 844, 848 (8th Cir. 2013). A boss asking his subordinate to babysit for him is not evidence of gender-based harassment. *Ceasar v. N. Star Steel Texas, Inc.,* 69 F. Supp. 2d 858, 867 (E.D. Tex. 1999). An employee not having access to all work materials (i.e. lack of keys to the office) did not sufficiently alter the conditions of the employee's employment and did not amount to a hostile work environment. *Gatewood v. Columbia Pub. Sch. Dist.*, 415 F. Supp. 2d 983, 1002 (W.D. Mo. 2006). An employee's lack of access to calendars on the computer is not a basis for a hostile work environment claim as "courts do not sit as 'super-personnel departments to resolve such disagreements.'" *Gatewood,* 415 F. Supp. 2d at 1002) (quoting *Henderson v. Ford Motor Co.,* 403 F.3d 1026, 1034 (8th Cir. Apr.14, 2005) (federal courts do not have "authority to sit as super-personnel departments reviewing the

wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination.")

Even if the actions Freier-Heckler complains could be construed as harassment, there certainly is no evidence—besides Freier-Heckler's opinion—that any of Rutledge's actions were based on her gender. Rutledge hired Freier-Heckler, well-aware of her gender. Thus, it is unlikely that Rutledge took actions against her based upon her gender. "An individual who is willing to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class. This general principle applies regardless of whether the class is age, race, sex, or some other protected classification." *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 464 (6th Cir. 1995).

The alleged harassment in this case is not sufficiently severe or pervasive to constitute a hostile work environment. In addition, Freier-Heckler cannot establish that any of the conduct she complains of was based on her gender. Therefore, this Court should dismiss Freier-Heckler's hostile work environment claims.

3. **Retaliation**

Freier-Heckler cannot prove that there is any causal connection between her protected activity and her demotion. She must show that the VA demoted her because of her protected activity and prove "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. V. Nassar*, 570 U.S. 338, 360 (2013). As discussed above, Freier-Heckler's speculation that the VA demoted her in retaliation for her protected conduct is insufficient to create a genuine issue of material fact. *Lovelace v. BP Prods. N. Am.*, 252 F. App'x 33, 41 (6th Cir. 2007).

Even if Freier-Heckler could state a prima facie case of retaliation, the VA can articulate a "legitimate, nondiscriminatory reason" for its actions, as discussed in the previous sections.

13

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Freier-Heckler's subjective feelings on the matter are insufficient to show pretext. *See Hein v. All Am. Plywood Co.*, 232 F.3d 490, 490 (6th Cir. 2000) (subjective interpretation that employer's action was a comment on plaintiff's age insufficient to establish pretext).

Furthermore, the VA was entitled to rely upon the findings and recommendations of the AIB. The Sixth Circuit follows the "honest belief rule," under which only employment decisions based on impermissible factors are actionable. *Michael v. Caterpillar Fin. Svcs. Corp.*, 496 F.3d 587, 589-99 (6th Cir. 2007). Thus, if an employer reasonably and honestly relies on particularized facts when taking the adverse employment action, the employer is entitled to summary judgment even if its conclusion is later shown to be "mistaken, foolish, trivial, or baseless." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 401 (6th Cir. 2009).

Freier-Heckler was demoted based upon the findings and recommendation of the AIB. The demotion was "based on an honestly held belief in a nondiscriminatory reason supported by particularized facts." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 709 (6th Cir. 2006). Thus, Defendants are entitled to judgment as a matter of law.

### III. Conclusion

For all of the foregoing reasons, this Court should grant summary judgment in favor of Defendants, and dismiss this case with prejudice, with costs to Freier-Heckler.

                                          Respectfully submitted,

                                          BRIDGET M. BRENNAN
                                          United States Attorney

By:    /s/ *Rema A. Ina*
           Sara E. DeCaro (0072485)
           Rema A. Ina (0082549)
           Assistant United States Attorneys
           United States Court House
           801 West Superior Ave., Suite 400
           Cleveland, OH 44113
           (216) 622-3670 (DeCaro)
           (216) 622-3723 (Ina)
           (216) 522-4982 (Fax)
           Sara.DeCaro@usdoj.gov
           Rema.Ina@usdoj.gov

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)

Pursuant to 28 U.S.C. § 1746, undersigned counsel certifies that the foregoing Reply in Support of Defendants' Summary Judgment is 14 (fourteen) pages in length and within the page limitations for cases assigned to the standard track.

                                          *s/ Rema A. Ina*
                                          REMA A. INA
                                          Assistant United States Attorney