IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION


LORA FREIER-HECKLER,

        Plaintiff,                    Case No.

     vs.                                    1:20CV367

ROBERT WILKIE, SECRETARY

OF THE DEPARTMENT OF

VETERAN AFFAIRS,

        Defendant.

- - - - -

DEPOSITION OF LORA FREIER-HECKLER

Taken on Tuesday, October 19, 2021, at 10:00 o'clock a.m.


At The Offices Of:

U.S. Attorney's Office

801 West Superior Avenue

Suite 400

Cleveland, Ohio  44113


Before Margaret Elmo, Court Reporter and

Notary Public in and for the State of Ohio

GOVERNMENT
EXHIBIT

1



Cefaratti Group
THE LITIGATION SUPPORT COMPANY

1.800.694.4787      www.cefgroup.com      fax: 216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, OH 44103  -  216.696.1161
Akron: 140 S. Main Street, Suite 1445, Akron, OH  44308  -  330.253.8119

46

1              Q.   Okay.  Then --

2              A.   Like maybe a purchaser was

3     doing a purchase and they needed it

4     signed off by a supervisor or an

5     assistant chief, I didn't have that

6     access.

7              Q.   To sign off on it?

8              A.   And then it would have been

9     complete.

10             Q.   Okay.  Do you know if Phil

11    signed off on it?

12             A.   He did because he wanted to.

13             Q.   Okay.  So he would do -- he

14    did not give you access because he did

15    it?

16             A.   I don't know if he did it or

17    not, but he didn't want me to have it.

18             Q.   Okay.  Did he ever tell you

19    that he didn't want you to have access

20    to it?

21             A.   Yes.

22             Q.   Okay.  What did he say?

23             A.   He didn't trust me.

24             Q.   Did he tell you why?

25             A.   I asked.  He didn't.  But he



Cefaratti Group
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax: 216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, OH 44103  -  216.696.1161
Akron: 140 S. Main Street, Suite 1445, Akron, OH 44308  -  330.253.8119

Lora Freier-Heckler                    10/19/2021

47

1  was on the interview board, he picked

2  me.

3          Q.  So he was part of the group

4  that hired you in that position?

5          A.  He was the final decision

6  who picked me.

7          Q.  Okay.  And he didn't tell

8  you why he didn't trust you?

9          A.  He did not.

10          Q.  How does this negatively

11  interfere with your work performance?

12          A.  Because I feel like Mr.

13  Rutledge hung over my head.  If I

14  didn't do what he asked me to do, then

15  my rating wouldn't be what it should

16  have been.

17          Q.  What do you mean by, your

18  rating?

19          A.  So different parts of the

20  year there's incentive awards that are

21  given out, approximately March through

22  maybe June, and then an end-of-year

23  rating.

24          Q.  So were you afraid you

25  wouldn't get an incentive reward; was


Cefaratti Group
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax: 216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, OH 44103 - 216.696.1161
Akron: 140 S. Main Street, Suite 1445, Akron, OH 44308 - 330.253.8119

Lora Freier-Heckler                    10/19/2021

48

1    that one concern?

2              A.   I knew I wouldn't.

3              Q.   And were you worried about

4    your end-of-year rating?

5              A.   I was afraid.

6              Q.   How were your ratings when

7    you worked under Phil Rutledge, your

8    end-of-year reviews?

9              A.   The same as they had been

10   for decades, outstanding.

11             Q.   Did you get any incentive

12   rewards while you worked under Phil

13   Rutledge?

14             A.   I believe so.

15             Q.   Okay.  How else did he --

16   did Phil Rutledge create a hostile work

17   environment for you?

18             A.   He moved my office away from

19   the employees I was supposed to

20   supervise.

21             Q.   Okay.  Correct me if I'm

22   wrong, I read that you were moved from

23   a cubicle to an office; is that correct?

24             A.   That is not correct.

25             Q.   You were always in an



49

1    office?

2             A.   I was in an office and I was

3    moved across the hall into a secured

4    room with him with separate offices.

5             Q.   Okay.  But you were in the

6    same area as Phil Rutledge, you were

7    moved to?

8             A.   Correct.  He moved me over

9    in his section.  So there's a suite, a

10   hall and into another suite.

11            Q.   Okay.

12            A.   With separate offices.

13            Q.   Did he tell you why?

14            A.   He said it was because we

15   were getting more staff, but that was

16   not true.

17            Q.   Okay.  And you didn't like

18   the move?

19            A.   I did not like the move.

20            Q.   Did you tell him that?

21            A.   I did tell him that.

22            Q.   What did he say?

23            A.   You're moving.

24            Q.   Okay.  How did moving your

25   office to the suite across the hall


**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax: 216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, OH 44103  -  216.696.1161
Akron: 140 S. Main Street, Suite 1445, Akron, OH 44308  -  330.253.8119

**Lora Freier-Heckler**                    10/19/2021

54

1          Q.  Your house.  Okay.  Do you

2    remember how long it was for?

3          A.  Several hours.  I think he

4    had someone else to watch him, but they

5    canceled and he went on a date.

6          Q.  Any other ways that he

7    created a hostile work environment?

8          A.  After that, he asked me to

9    watch his house.

10         Q.  Was he out of town or

11   something like that?

12         A.  He was going out of town and

13   the person that was supposed to watch

14   his house canceled for whatever reason.

15         Q.  Okay.  Did you watch his

16   house?

17         A.  So there's a difference

18   between asking someone to do

19   something --

20         Q.  I'm sorry.  I can see you're

21   getting emotional.  Why does it make you

22   so emotional?

23         A.  You're not making me

24   emotional. What he did to me, every time

25   I have to talk about it and relive it


Cefaratti Group
THE LITIGATION SUPPORT COMPANY

1.800.694.4787     www.cefgroup.com     fax: 216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, OH 44103  -  216.696.1161
Akron: 140 S. Main Street, Suite 1445, Akron, OH 44308  -  330.253.8119

**Lora Freier-Heckler**                          10/19/2021

56

1  his cat. I never went there alone.  I

2  went with my husband.  And I would like

3  to add that when I watched his son my

4  husband was there.

5              Q.  Okay.  How many days did you

6  check the mail or check on the cat?

7              A.  I mean it's been years.

8  Approximately a week.

9              Q.  How else did he create a

10  hostile  work environment?

11              A.  There would be daily

12  meetings, weekly meetings.  They were

13  different.  And he would bypass me in

14  front of subordinates of mine.

15              Q.  What do you mean by that?

16              A.  They were all male.

17              Q.  Who was all male, your

18  subordinates?

19              A.  Yes.

20              Q.  So you're saying in the

21  meeting he would bypass you?

22              A.  That's what I'm saying.

23              Q.  What do you mean by bypass?

24              A.  I mean if everybody got the

25  opportunity to talk in here, he would


**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787     www.cefgroup.com     fax: 216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, OH 44103  -  216.696.1161
Akron: 140 S. Main Street, Suite 1445, Akron, OH 44308  -  330.253.8119

**Lora Freier-Heckler**                    10/19/2021

                                                    57

1    bypass me if everyone in here was male.

2              Q.   So he wouldn't let you talk?

3              A.   There was one meeting where

4    he told me I couldn't talk.

5              Q.   Do you remember what meeting

6    that was that he told you not to talk?

7              A.   It was a weekly meeting.  It

8    was the supervisor's meeting.

9              Q.   Okay.  Did you attempt to

10   talk and he told you stop talking?

11   What exactly happened?

12             A.   That's exactly what happened.

13             Q.   Okay.  Did he give you a

14   reason why to stop talking?

15             A.   So this is approximately two

16   years into this behavior.  That was the

17   day I had enough.  And I had a white

18   female -- so this particular meeting

19   there were like junior supervisors --

20   one junior supervisor that was there,

21   she was in charge of purchasing.  Junior

22   meaning she was a lower grade than the

23   rest of the 12 supervisors.

24             There was a white female and a

25   black female, and they were



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax: 216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, OH  44103  -  216.696.1161
Akron: 140 S. Main Street, Suite 1445, Akron, OH  44308  -  330.253.8119

Lora Freier-Heckler                    10/19/2021

60

1    that's where the meeting was.

2              Q.  Okay.  And that's when you

3    asked to speak and he said no?

4              A.  Correct.

5              Q.  Did he give you a reason or

6    he just said, no, you can't speak?

7              A.  He didn't give me a reason.

8              Q.  Okay.  Then he went to his

9    office and you went into his office to

10   ask him why?

11             A.  Yes.

12             Q.  When you went to his office

13   to ask him why, was anybody else in his

14   office?

15             A.  No, that's why I left the

16   door open.

17             Q.  And he didn't answer, he

18   just walked out?

19             A.  They heard the conversation

20   because they wrote reports of contact.

21             Q.  But he didn't answer, he

22   just walked out of his office?

23             A.  I said, why are you not

24   letting me talk and he just looked at

25   me, shrugged his shoulders and was like,


**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax: 216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, OH 44103  -  216.696.1161
Akron: 140 S. Main Street, Suite 1445, Akron, OH 44308  -  330.253.8119

61

1    no, and turned around and left, went

2    back to the meeting like it never

3    happened.  But he would never, ever,

4    ever treat a male like that.

5              Q.   Then at that point did he

6    say that you could go while the others

7    stayed behind?

8              A.   So he wrapped up a few

9    things at the end of the meeting and

10   then he dismissed me and told them to

11   stay.

12             Q.   Okay.

13             A.   When I should have been the

14   one that stayed.

15             Q.   Why do you say that?

16             A.   Because in meetings past, all

17   the meetings past, I'm the one that

18   stayed to review matters that didn't

19   have to do with them.

20             Q.   Okay.  At this particular

21   meeting was he going to be discussing

22   things that maybe didn't pertain to you?

23             A.   Everything pertained to me, I

24   was assistant chief.  I was responsible

25   for everything.


Cefaratti Group
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax: 216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, OH 44103  -  216.696.1161
Akron: 140 S. Main Street, Suite 1445, Akron, OH 44308 - 330.253.8119

62

1              Q.  After this meeting did he

2     ever tell you to leave another meeting

3     again?

4              A.  No.

5              Q.  Okay.  Did he ever tell you

6     not to talk at another meeting?

7              A.   No.  He did tell me that I

8     couldn't talk to the director, Susan

9     Fuehrer, or the deputy director, Andy

10    Pasina, or the associate director, Beth

11    Lumia.  And that was my chain of

12    command.  He told me I could not talk

13    to them.

14             Q.  Did he say why?

15             A.  I said, they're my chain of

16    command. What he didn't realize is I

17    worked for Sue off and on in positions

18    for two decades.  And he said he didn't

19    want me to.  He wanted to control where

20    my office was, who I supervised, and he

21    wanted me to go to every meeting with

22    him.  There's no reason a chief and

23    assistant chief have to go to the same

24    meeting.

25             Q.  When he told you not to


Cefaratti Group
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax: 216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, OH 44103  -  216.696.1161
Akron: 140 S. Main Street, Suite 1445, Akron, OH 44308  -  330.253.8119

66

1    suites because he had a short reign on

2    me, where was I, I was meeting with

3    Charles, Andy, Beth, Sue.

4              Q.   Okay.

5              A.   But they put me back there.

6              Q.   How else did he create a

7    hostile work environment?

8              A.   If he was out, sick leave,

9    annual leave -- so when I went back

10   after the EMS detail, I met with the

11   director because he wouldn't give me my

12   access.  Meaning, if someone in another

13   service is ordering a product and their

14   chief signs off on it, it then has to

15   come to logistics to be processed and

16   either Phil or myself or a supervisor,

17   depending on what that product is, would

18   have to sign off on them daily,

19   everything that's purchased in the

20   hospital.  He would come in and override

21   my signature on what I signed on.

22             Q.   What does that mean?  Like

23   he would erase your signature and put

24   his instead?

25             A.   Yes.


Cefaratti Group
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax: 216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, OH 44103  -  216.696.1161
Akron: 140 S. Main Street, Suite 1445, Akron, OH 44308  -  330.253.8119

1   a service chief, he was like a dictator.

2   He wanted to sign off on everything.

3            So in an organizational chart you

4   have the chief, you have assistant

5   chief, flows down, you have the

6   supervisors, you have the  employees.

7   So every fiscal year you meet with

8   budget and you go over your org chart

9   and your budget.  They usually increase.

10            He took me out of the org chart

11   and put me over in the left-hand corner.

12            Q.  How else did he create a

13   hostile work environment?

14            A.  That added to it because I

15   met with Andy Pasina about it.

16            Q.  Okay.  And what else did

17   Phil Rutledge do?

18            A.  He was demeaning every day.

19            Q.  How so?

20            A.  With his jokes, with his

21   female jokes, with his female pictures

22   on his phone.

23            The VISN had a mandate that all

24   GS-7 supply techs would become GS-9s.

25   The only person that had experience in


**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax: 216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, OH 44103 - 216.696.1161
Akron: 140 S. Main Street, Suite 1445, Akron, OH 44308 - 330.253.8119

**72**

1  cultural diversity at the Cleveland

2  Heights Police Academy, so I really

3  didn't want to see it.

4           Q.  Okay.  Let's see.  How else

5  did he create a hostile work

6  environment?

7           A.  He created a hostile work

8  environment when Bill Precht thought he

9  could have gotten the assistant chief

10  job three days after I got there.

11           Q.  Okay.  What do you mean by

12  that?

13           A.  Bill Precht told me that

14  Phil offered him the position, and that

15  he told employees that he was getting it

16  the November prior.  But I wasn't in

17  the service, I wouldn't know any of that

18  took place.  But I was only there three

19  days and Bill Precht thought -- he was

20  comfortable enough to come into his

21  assistant chief's office and make that

22  comment.  But he was drinking buddies

23  with Phil and they shared a commonality

24  with their Jeeps and Bill would go over

25  there and they would put hard tops on,



74

1   was the final decision maker who put you

2   in that position?

3                A.   That was my understanding

4   when I called HR, because I wanted to

5   know I got the  position on my own

6   merit and they said I did.

7                Q.   Okay.  How else did Phil

8   Rutledge create a hostile work

9   environment?

10               A.   He, on a daily basis,

11  treated me different than the male

12  supervisors and males in the section.

13               Q.   Okay.  How so?

14               A.   Leaving me out of meetings.

15  When I went back the second time from

16  EMS, he took away my access to his

17  calendar.  And they sound like a minute

18  thing, but it wasn't for him because

19  that's how he ran the service.  The

20  supervisors had access to his calendar.

21  He wouldn't send you an email saying

22  you're invited to this meeting. You were

23  just supposed to check his calendar and

24  see if there was a meeting.

25               Q.   Okay.


Cefaratti Group
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax: 216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, OH 44103  -  216.696.1161
Akron: 140 S. Main Street, Suite 1445, Akron, OH 44308 - 330.253.8119

80

1    that that's the way I knew if I had to

2    go to a meeting that was  separate from

3    maybe that Tuesday meeting with Beth at

4    10:00.

5              Q.  Okay.  Did you talk to Phil

6    Rutledge about him denying your access

7    to his calendar?

8              A.  I did.

9              Q.  What did he say?

10             A.  He didn't want me to have

11   access.

12             Q.  Did he tell you why?

13             A.  He said that it was private

14   and nobody had access, but that was a

15   false statement.  Because I already

16   checked with the employees and I

17   continued to check with them and they

18   still had access.  Suuru had access

19   until he retired, so did Bob.

20             Q.  Okay.  How else did Phil

21   Rutledge create a hostile work

22   environment?

23             A.  In meetings he would

24   undermine what I was saying.

25             Q.  Okay.  How so?



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax: 216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, OH 44103  -  216.696.1161
Akron: 140 S. Main Street, Suite 1445, Akron, OH 44308  -  330.253.8119

81

1              A.  He wanted to be the subject

2    matter, expert on everything.  If

3    someone asked me whatever and I answered

4    it, he would try to degrade what I was

5    -- what I was saying.

6              Q.  Can you give me an example?

7              A.  I would go to a meeting in

8    the front  office, say with Beth, we

9    would be giving whatever data we needed

10   to report out on and then he would add

11   to what I was saying, but it wasn't

12   true.  So I don't know if I put my head

13   down, but Beth would say, well, are

14   these figures correct, forcing me to say

15   no.

16              But neither one should have put

17   me in that position because I shouldn't

18   have been at the meeting with Beth

19   because a service chief goes to a

20   meeting with an associate and a deputy

21   alone, unless they've requested both of

22   them.

23              Q.  Okay.  Any other way he

24   created a hostile work environment?

25              A.  Yes.  Four days after I was



83

1    will be in the 90s, I guarantee you.

2              And she said, how are you going

3    to guarantee that?  And she said because

4    Lora's going to be in charge of this

5    inspection.

6              I sat there and thought, what is

7    going on.  And when I got out of there

8    -- well, prior to that she said, how do

9    you know you're going to get 90, and

10   she said because Lora used to work for

11   me.  The meeting kind of ended, but

12   then Rutledge outside the door berated

13   me in front of supervisors, why did that

14   happen, why did she say that?  And I

15   only told him to go ask her, I don't

16   know why.

17             Q.  Okay.  How else did he

18   create a hostile work environment?

19             A.  I didn't feel that I could

20   apply for  another position because I

21   observed Rutledge on one call where he

22   should have been giving a rating for

23   someone who called for a recommendation,

24   and he was silent.  And he said, well,

25   that speaks volumes for people that want


**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787     www.cefgroup.com      fax: 216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, OH 44103  -  216.696.1161
Akron: 140 S. Main Street, Suite 1445, Akron, OH 44308 - 330.253.8119

1   to leave.

2           Well, I knew that he would be

3   doing that to me.

4           Q.  That he wouldn't give you a

5   good recommendation?

6           A.  Correct.  Because he should

7   have been -- to the person that was

8   asking -- that he had on the phone for

9   the person that was applying.  But

10  again, that goes back to wanting to be

11  this dictator of, you can't go, you

12  can't stay and do what you're supposed

13  to do, you have to do what he wants you

14  to do.

15          Q.  Okay.  How else would Phil

16  Rutledge create a hostile work

17  environment?

18          A.  So after I -- after I filed,

19  thinking the EEO process would assist

20  me, which it didn't; thinking ORM would

21  assist me, which it did not; thinking

22  whistle blower would assist me, which it

23  did not; I had to go through all these

24  federal processes to get my letter for

25  the right  to sue, which I was looking



Cefaratti Group
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax: 216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, OH 44103  -  216.696.1161
Akron: 140 S. Main Street, Suite 1445, Akron, OH 44308  -  330.253.8119

Lora Freier-Heckler                    10/19/2021

85

1    for.  Because what was done to me

2    should not have been done to me.

3              And I sure should have been

4    protected after I filed formally, which

5    I was not because they stopped talking

6    to me in 2017 and didn't engage me

7    until 2020, 2021.

8              Q.   Who stopped talking to you?

9              A.   Sue Fuehrer, Andy Pasina,

10   Beth.

11             Q.   How else did Phil Rutledge

12   create a hostile work environment?

13             A.   By passing me over in

14   meetings. It's demoralizing.  What does

15   that say to the male supervisors in the

16   room that are a lower grade than you.

17   But what they've consistently done is

18   inconsistent from the director down to

19   the chief with the accountability in

20   management of taxpayer dollars.

21             Q.   Were there other ways that

22   Phil Rutledge created a hostile work

23   environment that we haven't talked

24   about?

25             A.   I'm sure there were more.


Cefaratti Group
THE LITIGATION SUPPORT COMPANY

1.800.694.4787     www.cefgroup.com     fax: 216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, OH 44103  -  216.696.1161
Akron: 140 S. Main Street, Suite 1445, Akron, OH 44308  -  330.253.8119

```
 1    doctor?

 2            A.  No, he just said that he

 3    would not. The only difference between

 4    me, Tim and Neil is that I'm a female.

 5            Q.  Okay.  How did this affect,

 6    negatively interfere with your work

 7    performance when he wouldn't call you

 8    doctor?

 9            A.  Well, it's disrespectful.

10    Right? It causes animosity in meetings

11    because he's being respectful to Tim

12    Heimann in meetings, he's being

13    respectful to Tim Peachy.  And when

14    they're not present, when supervisors

15    are present, he's  just blatantly not

16    respectful towards me and the only thing

17    that was different between me and any

18    other supervisors was that I was a

19    female.

20            Q.  Okay.  I'm glad that you

21    added that. Is there anything else that

22    you thought of?  We just took a lunch

23    break.  Anything else come up that you

24    remembered as far as things he did that

25    created a hostile work environment?
```



1.800.694.4787    www.cefgroup.com    fax: 216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, OH 44103 - 216.696.1161
Akron: 140 S. Main Street, Suite 1445, Akron, OH 44308 - 330.253.8119

134

1             A.   He would constantly, when I

2     would have to go to a meeting with him

3     and Beth or him and Andy or if Sue was

4     there, mostly Beth at the end, he would

5     -- after the meeting, he would say,

6     well, why did that happen, if they gave

7     me -- at one point Beth gave me

8     responsibility to do all the employee

9     actions because he wasn't filling

10    positions.

11            But I feel like management used

12    my past relationship with them to get

13    the positions filled, for example, but

14    didn't take care of the repeated problem

15    that I said existed towards me just

16    being a female.

17            Q.   Okay.  Any other ways that

18    he created a hostile work environment?

19            A.   Well, after Bill Precht was

20    -- HR actions were supposed to happen,

21    he went to the  chief of the director's

22    office.  Phil okayed Bill Precht to have

23    all of his accesses back in logistics,

24    but he was in a different position, he

25    was in surgery.  That was undermining


**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax: 216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, OH 44103  -  216.696.1161
Akron: 140 S. Main Street, Suite 1445, Akron, OH 44308  -  330.253.8119

**Lora Freier-Heckler** 10/19/2021

136

```
 1    approve a request and then final

 2    approve a request.  That's a conflict of

 3    interest times four.

 4              Q.  What was Precht's position at

 5    the time?

 6              A.  At which time?

 7              Q.  At the time he gave him all

 8    this access back.

 9              A.  He worked for surgery.  But

10    prior to that he worked for logistics in

11    just about the same position, but he was

12    sitting over in surgery because he

13    should have been a purchaser for

14    surgery.

15              Q.  So he was a purchaser?

16              A.  Yes.  But after that, the

17    director had him with the chief of

18    staff's admin officer. Then he went to

19    surgery and they made him a supervisor.

20              Q.  He was a supervisor in

21    surgery?

22              A.  They made him one.

23              Q.  Okay.  Any other ways that

24    Phil Rutledge created a hostile work

25    environment?
```


**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax: 216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, OH 44103  -  216.696.1161
Akron: 140 S. Main Street, Suite 1445, Akron, OH 44308  -  330.253.8119

184

1                    CERTIFICATE

2        .

3    State of Ohio,        )      SS.:

4    County of Cuyahoga.  )

5             I, Margaret Elmo, a Notary Public

6    within and for the State of Ohio, duly

7    commissioned and qualified, do hereby

8    certify that the within named witness,

9    was duly sworn to testify the truth, the

10   whole truth and nothing but the truth in

11   the cause aforesaid; that the testimony

12   then given by the witness was by me

13   reduced to stenotypy in the presence of

14   said witness; afterwards transcribed,

15   and that the foregoing is a true and

16   correct transcription of the testimony

17   so given by the witness.

18             I do further certify that this

19   deposition was taken at the time and

20   place in the foregoing caption

21   specified.

22             I do further certify that I am

23   not a relative, counsel or attorney for

24   either party, or otherwise interested in

25   the event of this action.

 Cefaratti Group
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax: 216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, OH 44103  -  216.696.1161
Akron: 140 S. Main Street, Suite 1445, Akron, OH 44308  -  330.253.8119

185

```
 1          I am not, nor is the court
 2   reporting firm with which I am
 3   affiliated, under a contract as defined
 4   in Civil Rule 28 (D).
 5          IN WITNESS WHEREOF, I have
 6   hereunto set my hand this ____29th_____ day of
 7   _____October_____ , 2021.
 8   .
 9   .
10   .
11   .
12   _____
13          Margaret Elmo, Notary Public
14          within and for the State of Ohio
15   .
16   .
17   .
18       My commission expires
19       November 17, 2022.
20   .
21   .
22   .
23   .
24   .
25   .
```


**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787     www.cefgroup.com     fax: 216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, OH 44103  -  216.696.1161
Akron: 140 S. Main Street, Suite 1445, Akron, OH  44308  -  330.253.8119