# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

SENIOR JUDGE DONALD C. NUGENT

Case Number: 1:20cv-0367


# DR. LORA FREIER-HECKLER,

*Plaintiff*


-vs-


# DENIS McDONOUGH, et al.,

*Defendants*

---

## PLAINTIFF'S POST-ARGUMENT MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Avery Friedman (0006103)
AVERY FRIEDMAN & ASSOCIATES
701 The City Club Building
850 Euclid Avenue
Cleveland, Ohio 44114-3358
(216) 621-9282
avery@lawfriedman.com
fairhousing@gmail.com

*Attorney for Plaintiff*

# TABLE OF CONTENTS

**Table of Contents**.................................................................................................... i

**Table of Authorities**................................................................................................ ii

<u>**INTRODUCTION**</u>                                                                  1

**I.**     <u>**ARGUMENT**</u>                                                                1

      A.  Title VII Makes No Distinction Between Overt, Intentional Sex Discrimination and Difference in Treatment Based on Sex for Actions which are Less Severe and Quantifiable     2

          1.   Anti-Discrimination Protections Under Section 703(a)(1)     3

          2.   Contextual Nature of Inquiry     8

          3.   Anti-Retaliation Protections Under Section 703-3(a)     9

          4.   The Legal Standard in Determining Whether VA's Use of the 2018 Retaliatory Proposed Double Demotion Is Pretextual or Legitimate     9

**II.**     <u>**CONCLUSION**</u>

                                                      13

**Certificate of Compliance**.................................................................................... 17

**Certificate of Service**............................................................................................. 18

# TABLE OF AUTHORITIES

<u>**CASES**</u>

*Amann v. Potter*, 105 F. App'x 802 (6th Cir. 2004)............................................................. 8

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ........................................ 2,4,9,14,15

*Gomez-Perez v. Potter*, 553 U.S. 474 (2008).......................................................................... 5

*Harper v. Elder*, 803 F. App'x 853 (6th Cir. 2020)............................................................... 8

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)..................................................................... 13

*Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321 (6th Cir. 2008)......................................... 3

*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977)............................................. 15

*Jackson v. Quanex Corp.*, 191 F.3d 647 (6th Cir. 1999)....................................................... 3

*Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876 (6th Cir. 1996)............................................ 8

*Meritor Sav. Bank v. Vinson*, 477 U.S. 57 (1986).................................................................. 13,14

*Miller v. Peck-Hannaford & Briggs Co.*, 142 F.3d 435 (6th Cir. 1998) (unpublished
table decision)............................................................................................................................ 8

*Minor v. Centocor, Inc.*, 457 F. 3d 632 (7th Cir. 2006)......................................................... 16

*Monak v. Ford Motor Co.*, 95 F. App'x 758 (6th Cir. 2004)................................................. 8

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998) ......................................... 13,14

*Ortiz-Diaz v. U. S. Dep't of Hous. & Urban Dev.*, 867 F.3d 70 (D.C. Cir. 2017).............. 6

*Policastro v. Nw. Airlines, Inc.*, 297 F.3d 535 (6th Cir. 2002)............................................ 8

*Regan v. Faurecia Auto. Seating, Inc.*, 679 F.3d 475 (6th Cir. 2012)................................. 7

*Ricci v. DeStefano*, 557 U.S. 557 (2009) .............................................................................. 5

*Stevens v. U.S. Postal Serv.*, 21 Fed. App'x 261 (6th Cir. 2001)......................................... 3

*Stransberry v. Air Wis. Airlines Corp.*, 651 F.3d 482 (6th Cir. 2011)................................. 12

*Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560 (2012)................................................... 4

*Tepper v. Potter*, 505 F.3d 508 (6th Cir. 2007)..................................................................... 8

# TABLE OF AUTHORITIES

*Threat v. City of Cleveland*, 6 F. 4th 672 (6th Cir. 2021)........................................ 7,8,14,16

*Vance v. Ball State Univ.,* 570 U.S. 421(2013)................................................ 2

*Virostek v. Liberty Twp. Police Dep't/Trs.*, 14 F. App'x 493 (6th Cir. 2001).................... 8

*Wade v. Automation Pers. Servs., Inc.*, 612 F. App'x 291 (6th Cir. 2015)........................ 8

*Waldo v. Consumers Energy Co.*, 726 F.3d 802 (6th Cir. 2013).................................... 3

*Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818 (5th Cir. 2019).................................... 6, 13

*Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564 (6th Cir. 2003)............................. 13

*White v. Baxter Healthcare Corp.*, 533 F.3d 381 (6th Cir. 2008)........................................ 12

*White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003)........................................ 13

*Zeller v. Canadian Nat'l Ry. Co.,* 666 Fed. App'x 517 (6th Cir. 2009)............................. 3

**STATUTES**

Civil Rights Act of 1964, Tit. VII, 42 U.S.C. 2000e et seq....................................... 1-7, 9,14,16

42 U.S.C. 2000e-2(a)(1) ........................................................ 2-6

42 U.S.C. 2000e-3(a)........................................................ 3,9

42 U.S.C. 2000e-16(a)........................................................ 4,5

**MISCELLANY**

EEOC Compliance Manual § 15-VII(B)(1) (2006)................................................ 6

Random House Dictionary of the English Language 306 (1966)........................................ 6

Webster's New International Dictionary of the English Language 556 (2d ed. 1958)........ 6

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **DR. LORA FREIER-HECKLER,** | ) | Case Number 1:20cv-0367 |
| Plaintiff, | ) | JUDGE  DONALD C. NUGENT |
| -vs- | ) | **PLAINTIFF'S  POST-ARGUMENT MEMORANDUM IN** |
| | ) | **OPPOSITION TO** |
| | ) | **DEFENDANTS' MOTION** |
| **DENIS McDONOUGH, et al.,** | ) | **FOR SUMMARY JUDGMENT** |
| Defendants, | ) | |

## INTRODUCTION

After February 1st oral arguments for and against summary judgment, the Court invited post-hearing briefs on issues which arose during the proceeding.

Two issues raised by the court and the VA for the first time are (1) is whether this case simply involves a difference in management styles and (2) whether the smaller acts of employment discrimination based on sex and the retaliation actions which followed are cognizable under Title VII.

## I.    ARGUMENT

Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 provides, in relevant part, that:

> [i]t shall be an unlawful employment practice for an employer * * * to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any

1

> individual with respect to h[er] *compensation, terms, conditions,*
> *or privileges of employment,* because of such [sex.]

42 U.S.C. 2000e-2(a)(1) [Emphasis added]  This case presents the question of whether

the Plaintiff, Dr. Lora Freier-Heckler, for purposes of a summary judgment motion

only, has presented sufficient evidence on the basis of sex and retaliation which

constitute actionable claims under Title VII "with respect to "terms, conditions, or

privileges of employment" under Section 703(a)(1). 42 U.S.C. 2000e-2(a)(1).

If the perpetrator of the discrimination or retaliation is a manager, as opposed

to a co-worker, the employer is liable as a consequence of the manager's actions.

*Vance v. Ball State Univ.,* 570 U.S. 421, 424 (2013).

A. <u>**Title VII Makes No Distinction Between Overt, Intentional Sex Discrimination and Difference in Treatment Based on Sex for Actions which are Less Severe and Quantifiable**</u>

Under Section 703(a)(1) of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

2000e-2(a)(1),  no showing of a "material" harm or adversity is required.

Section 703(a)(1) is <u>not</u> limited to material adverse employment decisions or other

employment actions. While <u>retaliation claims</u> under Section 704(a), 42 U.S.C. 2000e-

3(a), may be based on actions "that a reasonable employee would have found * * *

materially adverse," *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006),

there is <u>no</u> such materiality requirement for <u>discrimination claims</u> under Section

703(a)(1) of Title VII.

2

Moreover, with roughly 200 in-person meetings with VA executives and emails from the Plaintiff about what Rutledge was doing, the VA's inactions trigger liability because of its "manifest indifference or unreasonableness in light of the facts the employer knew or should have known." *Hawkins v. Anheuser-Busch, Inc.,* 517 F.3d 321, 338 (6th Cir. 2008); *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 814 (6th Cir. 2013); *Jackson v. Quanex Corp.,* 191 F.3d 647, 659 (6th Cir. 1999). Moreover, the VA took neither prompt nor meaningful action to stop Rutledge from his discriminatory or retaliatory actions. *Stevens v. U.S. Postal Serv.,* 21 Fed. App'x 261, 264 (6th Cir. 2001); *see Zeller v. Canadian Nat'l Ry. Co.,* 666 Fed. App'x 517, 526 (6th Cir. 2009)

### 1. <u>Anti-Discrimination Protections Under Section 703(a)(1)</u>

Does Title VII distinguish between an employer's double demotion stripping an employee of a position or if the boss locks you out of the informational calendar where information awareness is part of the job?

Title VII makes no such distinction. Rather, Section 703(a)(1) broadly prohibits any discrimination with respect to "compensation, terms, conditions, or privileges of employment" based on sex. 42 U.S.C. 2000e-2(a)(1). For example, does being shot in the butt fired by the boss's rubber band which diminishes your status, or being cut off from informational calendar computer access so you can't do your job or being isolated behind a locked door so subordinates have less access to you rise to the level of the "terms, conditions or privileges of employment" under Title VII?

A discriminatory differentiation such as denying informational access to a female manager but not male subordinates or trying to remove a female's organizationally-charted position without doing likewise to any male is actionable under Title VII even when there is "no reduction in pay and no more than a minor change in working conditions."

While Dr. Freier-Heckler denies that these kind of employment actions are not minor, the statute specifically identifies what the "meat" in a Title VII sex discrimination case is, that is, how broadly "terms, conditions, or privileges" are to be considered under Section703 (a)(1) of Title VII. The Supreme Court in *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) reaffirmed that there is no materiality requirement for discrimination claims under Section 703(a)(1) of Title VII.. Instead, Section 703(a)(1) prohibits all discrimination with respect to "compensation, terms, conditions, or privileges of employment." 42 U.S.C. 2000e-2(a)(1). Denying access to the informational computer calendar, isolating an underling from her subordinates or intentionally attempting to remove a position from the VA's organizational structure impacts on a term, condition or privilege of employment.

Nothing in Section 703(a)(1) requires extreme adverse employment actions like, for example, a "reduction in pay" or "more than a minor change in working conditions." If conditions at work worsen, that's a "personnel action" under 42 U.S.C. 2000e-16(a) under the ordinary meaning of the term. See *Taniguchi v. Kan Pac.*

*Saipan, Ltd.,* 566 U.S. 560, 566 (2012) ("When a term goes undefined in a statute, we give the term its ordinary meaning.").

42 U.S.C. 2000e-16(a) in the public section equivalent of the private sector Section 703(a)(1). And nothing about the context of Title VII's federal-sector provision suggests a departure from its ordinary meaning. To the contrary, worsening conditions based on sex or other protected characteristics directly undermines "the important purpose of Title VII - that the workplace be an environment free of discrimination." *Ricci v. DeStefano,* 557 U.S. 557, 580 (2009).

It is noteworthy that public-sector employment discrimination protections under Title VII are even broader than private sector protections. Title VII's federal-sector provision is a substantive workplace anti-discrimination provision. 42 U.S.C. 2000e-16(a).

Unlike its private-sector counterpart, the federal-sector anti-discrimination provision "contains a broad prohibition of 'discrimination,' rather than a list of specific prohibited practices." *Gomez-Perez v. Potter,* 553 U.S. 474, 487 (2008). Specifically, the federal-sector anti-discrimination provision states that "[a]ll personnel actions" affecting employees . . . "shall be made free from <u>any</u> discrimination based on" the same protected characteristics listed in the private-sector provision. 42 U.S.C. 2000e-16(a). [Emphasis added]

The phrase "terms, conditions, or privileges of employment," 42 U.S.C. 2000e-2(a)(1), plainly includes the working conditions Dr. Freier-Heckler challenges here -

the public humiliation by a boss, the exclusion of information in order to perform a job, the isolation from subordinates who are supposed to report to her and the nature of her job assignment.. See Webster's New International Dictionary of the English Language 556 (2d ed. 1958) (defining "conditions" to include "[a]ttendant circumstances * * * as [in], living conditions; playing conditions"); see also, *e.g.*, Random House Dictionary of the English Language 306 (1966) (defining "conditions" to include "situation with respect to circumstances").

That reading accords with common sense. A typical employee asked to describe her "terms" or "conditions * * * of employment," 42 U.S.C. 2000e-2(a)(1), would almost surely mention where she works and what she does. See EEOC Compliance Manual § 15-VII(B)(1) (2006) ("Work assignments are part-and-parcel of employees' everyday terms and conditions of employment.").

If "the meat," respectfully, limits the meaning of "terms, conditions, or privileges of employment," 42 U.S.C. 2000e-2(a)(1) , to overt, material adverse employment decisions, like a demotion, it would be an interpretation flying in the face of Title VII's text, Congress's purpose and Supreme Court precedent.

Our circuit and others have expressly rejected the reading and application of Title VII only to "significant and material" employment actions, *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019) (citation omitted). That restrictive reading would be atextual to Title VII. *See Ortiz-Diaz v. United States Dep't of Hous. & Urban Dev.*, 867 F.3d 70, 81 (D.C. Cir. 2017) (Kavanaugh, J., concurring).

In our circuit's recent analysis of the breadth of Title VII, Chief Judge Sutton clarified any question about its latitude. In *Threat v. City of Cleveland*, the district court granted summary judgment because it concluded that a mere directive ordering a shift change did not rise to the level of Title VII. Reversing, our circuit wrote unanimously that protections under Title VII are not limited to material terms, conditions or privileges. Based on the text of Title VII alone, to the three judges, the need to reverse was obvious:

> The main debate in this case turns on the meaning of 'compensation, terms, conditions, or privileges of employment.' 42 U.S.C. § 2000e-2(a)(1). Do the city's shift schedules amount to 'terms' of employment? Does getting priority because of seniority in choosing shifts amount to a "privilege" of employment? At one level, that seems easy. If the words of Title VII are our compass, it is straightforward to say that a shift schedule—whether, for example, the employee works the night shift or the day shift—counts as a term of employment. It's not even clear that we need dictionaries to confirm what fluent speakers of English know.

*Threat v. City of Cleveland*, 6 F. 4th 672, 677 (6th Cir. 2021)

So does the thrust in a Title VII claim compel a victim of discrimination to prove that a term, condition or privilege be material? The unanimous decision in *Threat* worked hard to say no:

> That leads to the [defendant] city's second line of attack. It points out that we have several decisions, many of them unpublished, that have said that shift changes do not count as materially adverse employment actions under Title VII. *See Regan v. Faurecia Auto. Seating, Inc.,* 679 F.3d 475, 482

(6th Cir. 2012); *Tepper v. Potter,* 505 F.3d 508, 516–17 (6th Cir. 2007); *Policastro v. Nw. Airlines, Inc.,* 297 F.3d 535, 539 (6th Cir. 2002); *Harper v. Elder,* 803 F. App'x 853, 857 (6th Cir. 2020); *Wade v. Automation Pers. Servs., Inc.,* 612 F. App'x 291, 300 (6th Cir. 2015); *Amann v. Potter,* 105 F. App'x 802, 808 (6th Cir. 2004); *Monak v. Ford Motor Co.,* 95 F. App'x 758, 765 (6th Cir. 2004); *Virostek v. Liberty Twp. Police Dep't/Trs.,* 14 F. App'x 493, 504 (6th Cir. 2001); *Miller v. Peck-Hannaford & Briggs Co.,* 142 F.3d 435 (6th Cir. 1998) (unpublished table decision); *Kocsis v. Multi-Care Mgmt., Inc.,* 97 F.3d 876, 885 (6th Cir. 1996).

Invoking these cases and related reassignment cases, the city makes a categorical argument—that  [s]hift changes do not constitute adverse employment actions."  Appellee Br. at 26.

But we have no such categorical rule. None of these cases creates an across-the-board directive that actionable discrimination claims never cover shift changes, whether in connection with seniority prerogatives or not. That is not what they say. Even *Kocsis,* one of the more frequently cited and far-reaching decisions in this line of cases, emphasizes the contextual nature of these inquiries. 97 F.3d at 886. It noted that 'indices that might be unique to a particular situation" could show that the adverse action was "more disruptive than a mere inconvenience or a mere 'alteration of job responsibilities' *Id.* (quotation omitted).

*Threat,* at  579.

## 2.  <u>Contextual Nature of Inquiry</u>

If the circuit tells us anything from *Kocsis v. Multi-Care Management, Inc,* 97 F. 3d 876, 886, 6th Cir. 2009) to its *Threat* decision six months ago, events need to be considered in context. If Rutledge disrespected Dr. Freier-Heckler so deeply that he refuses to refer to her as "doctor" unlike his reference to male doctors, or bars her

from speaking at staff meetings or refuses an order from top VA management to apologize, standing alone none of those acts violate Title VII.

But the context of what Rutledge does demonstrates the intentional nature of barring access to her subordinates, removing her from access to calendar informational data basic to her job functionality, generating a phony organizational chart to get rid of her and organizing crooked transportation workers to concoct an AIB because of her undisputedly uncovering scores of anomalies.

None of these events occurred in a vacuum. It is all context.

### 3.   Anti-Retaliation Protections Under Section 703-3(a)

Likewise, under the anti-retaliation provision of Title VII, Section 703-3(a), an employer may not "discriminate" against an individual  "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. 2000e-3(a); *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 61 (2006).

### 4.   The Legal Standard in Determining Whether VA's Use of the 2018 Retaliatory Proposed Double Demotion Is Pretextual or Legitimate

The 2018 proposed double demotion, for example, was merely one of the last in a series of unending discriminatory and retaliatory acts by the VAs Logistics Chief since 2015.

With respect to the 2018 action, no factual dispute exists that the VA chose Dr. Freier-Heckler over anyone else to do a <u>first</u> audit as primary investigator in the audit of William Precht working under Logistics Chief Rutledge which uncovered actions rife with wrongdoing (2015).

No factual dispute exists that the VA chose Dr. Freier-Heckler over anyone else to do a <u>third</u> audit as primary investigator in the audit of the Sandusky Veterans Nursing Home which uncovered actions rife with wrongdoing (2020). Same techniques as the first and second audit.

No factual dispute exists that the VA chose  Dr. Freier-Heckler over anyone else, having been  returned to work under Chief Rutledge, to do a <u>second</u> audit as primary investigator of the Transportation Department working under Logistics Chief Rutledge which uncovered  actions rife with wrongdoing (2017). Same techniques as the first audit. That generated the first AIB in which the VA had Dr. Freier-Heckler as its chief witness, "protected" in order to prove the pervasive misconduct in transportation.

Big difference between Audit #1 and Audit #3. In Audit #2, it was Dr. Freier-Heckler's boss encouraging malfunctioning transportation workers to file complaints against her.

"Protected" by VA? Hardly. No dispute exists that Rutledge openly admitted in deposition he encouraged organized Transportation workers to complain about Dr. Freier-Heckler.

10

A 2nd AIB, put together by VA executives, concluded she should be counselled.

She was never counselled. Instead, the VA  proposed a double demotion. Then VA realized the overt retaliatory look of a double demotion and, *sua sponte*, changed its mind and made it a single demotion.

To make the VA's actions even more disingenuous, five (5) days after she was demoted,  the VA came back to her again and engaged her - - - this time for a third time - - - to undertake the third audit. Same techniques as the first and second audit (2020).

The second audit was no different than the first.  The third was no different than the second. Even after demoting her, VA called her back to use the same techniques in a third audit five (5) days after her demotion. The proposed double demotion, modified as extreme, was changed to a single demotion, was nothing more than retaliation, changed to make it look less retaliatory.

Did the VA abide by the AIB recommendation to limit rectifying her actions to counselling?   It ignored it, offered <u>no</u> counseling, rather proposing a double demotion.

Then, after the demotion, VA hired her again to do a third audit, to do the same thing.

Especially in light of hundreds of complaints about Rutledge's unstoppable discrimination and retaliation, VA's contextual motives behind the demotion arising out of the second audit clearly generate a genuine issue of material fact.

Poor performance is, of course, a legitimate, non-discriminatory reason for an adverse employment decision. *See Stransberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 488 (6th Cir. 2011). But this case presents a 30-year-employee with nothing but outstanding annual evaluations whom VA promised to "protect" as a witness in an earlier AIB to uncover Transportation Department misconduct.

Was the demotion, never proposed by the VA in her first audit (or her third) legitimate or pretextual?

If the AIB found that counseling would have rectified the allegations, why did the VA ignore it and propose an extreme double demotion instead?

Why didn't the VA simply do what the AIB recommended and get her counselling which it never did?

And, despite all of this, why would the VA again hire her to do a third audit five (5) days after her demotion?

These are obviously fact questions meaningless without context. The questions present genuine issues of material fact. They are jury questions. And the evidence of both the substance and the timing of the punishment would shed light on whether the employer's proffered reason for the adverse employment action was its actual motivation.

Pretext is indirectly proven "by showing that the employer's stated reason for the adverse employment action . . . is insufficient to explain the employer's action." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008). Pretext can be proven by

"evidence which challenges the reasonableness of the employer's decision 'to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation.'  *Id.*, quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th  Cir. 2003) (*en banc*)

## II.  <u>CONCLUSION</u>

Nothing in the record shows that this case has anything to do with differing management approaches. The Fifth Circuit, for example, has suggested in some decisions that, "in certain cases, 'a change in or loss of job responsibilities … may be so significant and material that it rises to the level of an adverse employment action.'" *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019)  Imagine being cut off as Assistant Chief from the calendar which identifies deadlines, reports and meetings in January, 2017 <u>immediately</u> after a report to VA executives that Chief Rutledge discriminates against the female employees in Logistics.

The Supreme Court has held that Section 703(a)(1) "not only covers 'terms' and 'conditions' in the narrow contractual sense, but 'evinces a congressional intent to strike at the <u>entire spectrum of disparate treatment of men and women in employment.</u>" *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 78 (1998) (quoting *Meritor*, 477 U.S. at 64); *see, e.g., Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) [Emphasis added]. The fact that a job description includes a particular duty thus does not license an employer to discriminate among employees in their performance of that duty.

Ignoring all the events of 2015, 2016 and 2017, the VA argues only one act, a demotion, is the only act covered by Title VII.

But, it argues, even that doesn't count because enforcing Title VII would convert it to a "general civility code." Problem with the argument is that it flies in the face of existing law. For a variety of reasons, our circuit decision in *Threat* confirms the error of VA's thinking:

> The city worries that this approach will turn the anti-discrimination provision into a 'general civility code' that federal courts will use to police the pettiest forms of workplace misconduct. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). But that is the point of the de minimis exception. Plus, the provision 'protects an individual only from employment-related discrimination' based on a protected characteristic, not just any distinction in terms of employment. *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 61 (2006). Also misplaced is the city's view that § 703(a)(1) reaches only employment decisions that cause the employee economic harm. Cabining the provision to pocketbook harms would render meaningless many of the words in the statutory phrase 'compensation, terms, conditions, or privileges of employment.' As the words after 'compensation' suggest, Title VII indeed extends beyond 'economic discrimination.' *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 64 (1986).

*Threat,* at 680.

Congress and the Supreme Court have told us the opposite. Both the anti-discrimination and anti-retaliation provisions of Title VII do not limit Mr. Rutledge's inappropriate actions because roughly three dozen biased acts of varied nature affected the terms, conditions and privileges of Dr. Freier-Heckler's service as VA's

14

Assistant Logistics Chief.. See *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64, 126 S. Ct. 2405, 2412, 165 L. Ed. 2d 345 (2006). Dr. Freier-Heckler presents evidence of a blatantly hostile work environment. No singular pocketbook harm here.

If VA's Deputy Director Pacyna would have stopped the unchallengeably overt acts of discrimination and retaliation in 2015, 2016 and 2017, the VA wouldn't have had to cook up assigning Dr. Freier-Heckler as the chief auditor and protected witness concerning its wildly incompetent Transportation Department under Rutledge, only to set her up for a demotion.

She found the improprieties. Then VA turned around to punish her in a manner far exceeding even what the AIB recommended. She used the same techniques in uncovering a nine-million-dollar rip-off by William Precht. But the VA was fed up with her sex discrimination complaints about its Logistics chief.

In 2018, she was directed to audit the Transportation Department as a protected witness.  VA used her audit investigative approach, the <u>same</u> used in the audits <u>before</u> and <u>after</u> Transportation with success. The VA ignored the Transportation AIB recommendation of coaching and proposed a double demotion instead.

The VA has ignored four years of dozens of literally unchallenged acts of sex discrimination. It sees one in 2018. The disregard of dozens of discriminatory acts constitute a gross and perverse pattern of workplace bias suffered by Dr Freier-Heckler.  *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 3 24, 337–338 (1977).

The guidance in *Threat* helps here.

Regularly mispronouncing her name?  Rude, contextually important, but statutorily *de minimus*. Not calling her "doctor?"  Rude, contextually important, but statutorily *de minimus*.

But Rutledge's unashamed assault  with a rubber band to her posterior in front of co-workers? Attempting to remove her off the organizational chart? Cutting her off from critical information, the centerpiece of her job? Isolating her from reporting subordinates behind a locked door? Shutting her up at meetings? Affirmatively organizing lower-level malefactors in transportation with an effort to generate punishment?  VA ignoring every one of these events and more including ignoring the 2nd AIB proposed relief, counselling, and instead proposing an extreme double demotion?

> Congress enacted Title VII, the National Legislature provided no indication that it sought to disregard these considerations or to use the word 'discriminate' to cover *any* difference in personnel matters. Yes, 'hundreds if not thousands of decisions say that an 'adverse employment action' is essential to the plaintiff's 'prima facie case' even though 'that term does not appear in any employment-discrimination statute.' *Minor v. Centocor, Inc.*, 457 F. 3d 632, 634 (7th Cir. 2006). And, yes, the same could be said about a 'materiality' requirement. But we take these innovations to be shorthand for the operative words in the statute and otherwise to incorporate a *de minimus* exception to Title VII.

*Threat*, at 678-679 [Emphasis by the court] .With seven depositions filed by Dr. Freier-Heckler confirming these events, coupled with her 121-paragraph sworn statement

with exhibits corroborating her allegations, the record is heavily laden with evidence of discrimination and retaliation, easily satisfying the prima facie case she only needs to overcome a motion for summary judgment. Dr. Freier-Heckler has presented a tidal wave of contrary facts where genuine issues of material fact scream from the record. Dr. Freier-Heckler urges that Defendants' motion be denied.

Respectfully submitted,

_s/Avery Friedman_
Avery Friedman (0006103)
AVERY FRIEDMAN & ASSOCIATES
701 The City Club Building
850 Euclid Avenue
Cleveland, Ohio 44114
P: 216. 621.9282
F: 216. 621.9283
avery@lawfriedman.com
fairhousing@gmail.com

_Attorney for Plaintiff Dr. Lora Freier-Heckler_

## CERTIFICATE OF COMPLIANCE

I, Avery Friedman, attorney for the Plaintiff, pursuant to Local Rule 7.1(f), hereby certify that this case is assigned to the Standard Track and adheres to the page limitation set forth in the local rules.

_s/Avery Friedman_
Avery Friedman

17

## **CERTIFICATE OF SERVICE**

I, Avery Friedman, attorney for the Plaintiff, hereby certify that PLAINTIFF'S POST-ARGUMENT MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT was served on opposing counsel by the court's electronic filing system on this 10th day of February, 2022.

> *s/Avery Friedman*
> Avery Friedman